Exhibit # 3

RECEIVED
OCT 1 7 2006
CLERK, U.S. DISTRICT COURT
ANCHORAGE, ALASKA

# Testimony to parole board adds a twist to DNA case

**■ RAPE:** Convict insists he's innocent despite statements admitting guilt in 2004.

**By TATABOLINE BRANT**
Anchorage Daily News

The man at the center of Alaska's first battle over post-conviction DNA testing, who has maintained for years he is innocent of raping a Spenard prostitute, admitted his guilt to a parole board last year, according to documents filed in court Tuesday.

William Osborne told the board his low self-esteem led him to help another man beat and rape a woman near Earthquake Park in 1993.

"I had a tendency to always try to do whatever my friends were doing because I felt like if I didn't ... I would be the outsider," Osborne told the board, according to a transcript of the August 2004 hearing.

His parole was denied.

For at least four years, Osborne has been asking in both state and federal court for permission to do advanced DNA testing on semen and hair found at the Earthquake Park rape scene. The New York-based Innocence Project, whose intervention on DNA issues has helped free more than 80 wrongly convicted people across the country, is spearheading the federal case.



Osborne

Parole Board hearings are closed. This one became public when the state filed the transcript in court Tuesday. Assistant Attorney General Jay Fay-

See Page B-6, OSBORNE

2005

Anchorage Daily News

## Testimony to parole board complicates case for DNA testing

setting forth post-conviction DNA testing criteria, relied in part on past cases where someone had "consistently maintained" their innocence over time. "Mr. Osborne's not one of those guys," Fayette explained in an interview. "He said what he said, and I think the judge needs to know that."

The fiction that Osborne has steadfastly maintained his innocence has already found its way into a ruling issued Thursday by a federal appeals court, Fayette complained. The appeals court sent the case back to the U.S. District Court in Anchorage for further findings.

Former U.S. Attorney Bob Bundy, local counsel for the Innocence Project said: "This is just another issue that could be laid to rest once and for all by letting us test the DNA. If the state is so convinced he's guilty, the DNA will say it."

But Fayette says that's not true. Even if investigators picked up the wrong condom from the outdoor crime scene, the rest of the evidence is still conclusive. "It's entirely arguable whether or not (the biological evidence) was from this assault," Fayette said. But everyone knew that at the time of the trial, he said — including Osborne's attorney.

"They were told fair and square, here's this evidence," Fayette said. "They could have had it tested in 1993."

The DNA tests done before the trial showed that the semen in the condom matched some 16 percent of the African American population, a group that included Osborne. He asked for more advanced testing, according to his appeal, but his attorney at the time refused, strategizing that the inconclusive results were actually in his favor because they showed the semen could have come from any number of people.

To retest now doesn't make sense, Fayette said. Co-defendant Jackson, the victim, and even Osborne himself have said he is guilty. "No matter what the result is, there's plenty of other evidence that supports his conviction."

Cavanaugh said he plans to file an affidavit by Osborne swearing to his innocence, even though that could put his client on the line for perjury before the Parole Board.

■ Daily News reporter Tataboline Brant can be reached at tbrant@adn.com or 257-4321.

# OSBORNE:

*Continued from B-1*

ette said he filed it to correct repeated defense statements — in court and out — that Osborne has always denied any role in the rape. That's not true, Fayette said.

"That fact has been concealed from the judges until (last week)," Fayette said. "But now, everybody is going to know that Osborne admitted he was the guy."

Osborne's attorney says the confession was a lie — a desperate measure by a desperate man who, having lost all faith in the system that wrongly convicted him, tried to regain his freedom the only way he could think of: by telling Parole Board members what they wanted to hear.

"Osborne was despairing and he saw a chance at the door," said defense attorney Randall Cavanaugh, who said he was frustrated with what Osborne said but also understood why.

Cavanaugh is handling the state suit, which has been to the Alaska Court of Appeals and is now back before Superior Court Judge Sharon Gleason for further findings.

Osborne's conversation with the parole board goes to the heart of one of the things Gleason must consider, Fayette said — whether the post-conviction DNA testing "would likely be conclusive" in determining Osborne's innocence.

How could it be, if he has admitted his guilt? Fayette said.

Colin Starger, an attorney with the Innocence Project, said his group has seen wrongly imprisoned people give false confessions to parole boards to try to get released, as well as others who refused to lie, knowing it meant they would stay behind bars.

He called the prosecutor's filing of Osborne's parole board statements "totally inappropriate."

"What is said in a parole hearing is so charged with politics — specifically the politics of get tough on crime, law and order — it really has no bearing on whether that person committed the crime," he said.

Osborne's statement is "not so much a confession but an indictment of the way the whole system works," he said.

Cavanaugh said the judge should consider only what happened at Osborne's 1993 trial — not something he said later. Osborne's 12 years in prison have not been easy, Cavanaugh said.

"He has spent six years in the hole. It's a tiny room, with very little outside contact. And when you're in the hole, many people (there) are mentally ill and you have to deal with their screaming and everything else. It's a very unpleasant place," he said.

The conversation with the parole board is just one more snag in Osborne's long quest to get some of the evidence used against him at trial retested in light of more advanced DNA technology.

The state does not want to hand over the evidence for testing. They say that even if the DNA came back as someone else's, the results would not prove Osborne innocent because both his co-defendant and the victim identified him.

"The reason the state's waving this around is they've been taking a thumping on bad publicity," Cavanaugh said. "(They're) trying to short circuit Judge Gleason from examining the trial and seeing the flaws. ... They're terrified of the (DNA) results. ... and they're trying to do anything to prevent us from testing."

Not so, said Fayette.

The state appeals court, in